SO ORDERED.

SIGNED this 14th day of August, 2015.





Robert E. Nugent
United States Chief Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DYNAMIC DRYWALL, INC. | ) | Case No. 14-11131 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| DYNAMIC DRYWALL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adv. No. 15-5016 |
| | ) | |
| HARTFORD FIRE INSURANCE | ) | |
| COMPANY and STINSON LEONARD | ) | |
| STREET LLP, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING STINSON LEONARD STREET'S
MOTION TO DISMISS

1

Dynamic Drywall, Inc. (DDI) filed an adversary proceeding against Hartford Insurance, Inc. and Stinson Leonard Street (SLS) asserting a breach of contract claim against the former and seeking a declaration that the latter is not entitled to an attorney's fee lien against the Hartford contract claim. After SLS answered and waived its fees, effectively mooting the second claim for relief to determine the attorney lien's validity, DDI amended its complaint to add a third claim for relief.[1] Plaintiff now says that SLS breached its fiduciary duty to plaintiff by failing to segregate fees it billed for work on the Hartford litigation from fees it billed for other matters and that if I find that Hartford did breach the contract, but that DDI can't recover because the fees weren't segregated, SLS should be liable for whatever DDI is unable to recover from Hartford due to the billing error. Both defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6) as made applicable to adversary proceedings under Fed. R. Bankr. P. 7012(b). DDI sought additional time to respond to Hartford's motion, but has failed to respond to SLS's motion and its time to do so has expired. For the reasons set forth below, SLS's motion is GRANTED; Hartford's motion will be addressed in a separate order when the briefing is complete.[2]

*Factual and Procedural Background*

DDI's causes of action arise out of years of prior state court construction litigation commenced in 2006 surrounding DDI's efforts to recover amounts under a subcontract it claimed the general contractor Building Construction Enterprises, Inc.

---

[1] *See* Fed. R. Civ. P. 15(a)(1)(B) as made applicable in adversary proceedings by Fed. R. Bankr. P. 7015.
[2] Defendant Stinson Leonard Street LLP appears by its attorney Nicholas J. Zluticky. Plaintiff Dynamic Drywall, Inc. makes no appearance on SLS's Motion to Dismiss.

**2**

(BCE) owed it for labor and materials provided on a Johnson County department of corrections project bonded by Hartford. At the end of that litigation, in 2014, the District Court of Johnson County, Kansas entered judgment against BCE, but not Hartford, awarding certain attorney's fees and expenses DDI incurred in pursuing the claims. BCE is insolvent. On May 5, 2014, DDI appealed the fee denial as against Hartford to the Kansas Court of Appeals. DDI filed its chapter 11 bankruptcy on May 21, 2014 and on August 6, 2014, I granted Hartford and BCE relief from the automatic stay to defend the appeal.[3] That appeal remains pending and unresolved.[4]

DDI's claim against SLS, its former counsel in the state court litigation, is best understood in context with its claim against Hartford in this matter. The general contractor, BCE filed a state court lawsuit against the Johnson County Public Building Commission (PBC) seeking to recover for unpaid labor and materials provided in the construction of a correctional facility in Johnson County. DDI, also unpaid and represented by SLS, intervened in that action to recover under its subcontract with BCE. Hartford, as bond surety, issued the statutory payment and performance bonds for the project. BCE filed a counterclaim against DDI. Their subcontract provided that the prevailing party in any litigation to enforce the agreement would be awarded its attorney's fees and expenses. This state court action began in 2006 and in February of 2010, DDI, Hartford, and BCE entered into a partial settlement agreement providing that Hartford would pay $325,000 in full satisfaction

---

[3] Dkt. 38.
[4] *Building Construction Enterprises, Inc. v. Public Building Commission of Johnson County, Kansas, et al.,* Johnson County District Court Case No. 06CV3708, Appeal No. 111820 (Kan. App.).

of DDI's claims versus BCE and Hartford, but DDI's attorney fee claim was excepted from the scope of the settlement and the attendant releases.[5] Indeed, the parties expressly agreed that DDI could seek fees in the remainder of the litigation and further agreed that:

> Hartford and BCE will not contest that DDI is entitled to attorney fees . . . *except that Hartford and BCE specifically reserve the right to challenge the amount of the attorney fees based on the Subcontract and Kansas law*.[6]

DDI subsequently filed its attorney's fees motion and, in 2011, the Johnson County District Court conducted a three day evidentiary hearing on it. Both Hartford and BCE objected to the motion. Hartford specifically contested that DDI could recover attorney fees under the payment bond. Hartford challenged the fees claimed, alleging first that as a Kansas surety, it is not liable to pay attorney fees because those are not lienable labor and materials under KAN. STAT. ANN. § 60-1111, and second, that not all of the fees claimed were specifically incurred by DDI in its pursuit of the BCE recovery.

In April of 2014, the state court issued a lengthy reasoned order concluding that DDI was not entitled to recover any fees from Hartford under the payment bond and that it was only entitled to recover $378,662 of its $619,313 claimed fees against BCE.[7] The court specifically questioned whether all of the fees charged by SLS and claimed by DDI were incurred in the course of the BCE litigation and denied those it found were not. Then, in an odd twist, the state court stated that this amount could

---

[5] Adv. Dkt. 17-1.
[6] Adv. Dkt. 17-1 at ¶ 6.
[7] Adv. Dkt. 17-3.

4

be adjusted for "legal work not related to the claims and issues involved in the dispute between BCE and DDI, which shall be determined at a subsequent hearing."[8] The judge commented at length about his doubt that BCE should have to pay as much as he had ordered and suggested that SLS's fees were unwarranted because they were for "significant amounts of time and expense relating to claims and issues for which DDI is not entitled to recover attorney fees." Commenting further on the evidence, he noted that he'd found both the billing lawyer's and DDI's expert witness's testimony less than credible. He appended a condition subsequent to the fee award, inviting BCE to "bring to the court's attention by a motion to reduce the judgment at a later hearing" any billed-for items not related to the BCE litigation.[9] BCE never filed that motion; DDI appealed the fees judgment to the Kansas Court of Appeals and shortly thereafter, filed its voluntary chapter 11 petition here.[10]

Now, DDI claims that Hartford breached the settlement agreement when it challenged DDI's right to recover attorney fees and expenses.[11] Hartford has moved to dismiss that claim and DDI has not, as of this writing, responded.[12] As to SLS, DDI says that if it can recover against Hartford on the breach claim, but is stymied by SLS's failure to properly segregate BCE-related fees from other non-BCE fees, it is entitled to recover from SLS what it lost. Its legal theory is that SLS breached both

---

[8] *Id.* at p. 17.
[9] *Id.* at p. 16.
[10] Later in DDI's bankruptcy, BCE and Hartford belatedly sought reconsideration of the fee award as invited by the state court. On October 22, 2014, this Court denied their motion to lift the stay to pursue that motion. *See* Dkt. 111.
[11] Adv. Dkt. 17 at ¶ 2 and pp. 3-9 (First Claim for Relief).
[12] DDI has obtained an extension of time to August 17, 2015 to file its response. *See* Adv. Dkt. 33.

5

its fiduciary duty and its duty of care to DDI when it failed to heed DDI's alleged instructions to segregate the fees on its statements.[13] The result of that breach, DDI says, was the reduction of BCE-related fees owing to it.

DDI initially sued SLS for a declaration that its attorney fee lien did not attach to the above-described contract cause of action against Hartford. SLS answered and waived its lien and attorney fee claim against DDI.[14] DDI amended its complaint to add as a second claim against SLS the professional liability claim described above. SLS's current motion to dismiss followed, to which DDI has filed no response.[15]

### *Legal Standards for Rule 12(b)(6) Motions to Dismiss*

An uncontested motion to dismiss may not be granted merely because the non-moving party has failed to file a response.[16] The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the allegations within the four corners of the complaint and to that end, the Court is required to examine the allegations in the plaintiff's complaint and determine whether plaintiff has stated a claim for relief, whether or not the non-moving party has filed an opposing memorandum of law.

In determining whether DDI has stated a claim, I take the facts pleaded in the complaint as true and draw any inferences against SLS.[17] If relief under those facts

---

[13] Adv. Dkt. 17, pp. 10-12 (Third Claim for Relief).
[14] Adv. Dkt. 11.
[15] Adv. Dkt. 26, 27.
[16] *Issa v. Comp USA,* 354 F.3d 1174, 1177-78 (10th Cir. 2003). The consequence of not timely filing a response to the motion to dismiss is that the party is deemed to have waived the right to file an opposing memorandum. *See* D. Kan. Rule 7.4(b).
[17] *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (In reviewing the sufficiency of the complaint, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff.); *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994) (A Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after accepting as true all well-

**6**

is facially plausible, the complaint survives. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The question is whether the complaint contains facts sufficient to support these claims, not whether DDI will ultimately prevail on those claims.[18] The plausibility standard is less than a probability but more than a sheer possibility that DDI is entitled to the relief requested.[19] In addition, I may consider the exhibits or attachments to DDI's amended complaint without converting the motion to dismiss to one for summary judgment under Fed. R. Civ. P. 12(d).[20] Specifically, I can take judicial notice of petitions, orders, journal entries, or other pleadings from the state court case which were referenced in or attached to DDI's amended complaint.[21]

*Analysis*

Because SLS has waived its right to attorney fees from DDI and its alleged attorney fee lien, the second cause of action for determination of the validity of the

---

pleaded factual allegations.).
[18] *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (In ruling on a motion to dismiss the judge must accept all allegations as true and may not dismiss on the basis that it appears unlikely the allegations can be proven.).
[19] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).
[20] *See Navajo Nation v. Urban Outfitters, Inc.,* 935 F. Supp. 2d 1147, 1157 (D.N.M. 2013) (Conversion is not required under Rule 12(d) when the court considers information that is subject to proper judicial notice (*e.g.* facts that are a matter of public record such as pleadings in a related case) or exhibits attached to the complaint); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).
[21] *Tal v. Hogan,* 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006) (exhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a Rule 12(b)(6) motion and courts may take judicial notice of facts which are a matter of public record).

lien is moot; the Court focuses its analysis on DDI's third cause of action – the professional liability claim – asserted against SLS in the amended complaint.

### *DDI fails to state a claim against SLS based upon the ripeness doctrine.*

As DDI's amended complaint states, the state court has previously entered an order determining (1) that Hartford is not legally liable for DDI's attorney fees in the DDI/BCE/Hartford dispute; and (2) that BCE owes $378,662 in prevailing party attorney fees to DDI, subject to a motion for reconsideration that BCE never filed. The legal issue that surrounds whether Hartford is liable to pay a subcontractor's attorney fees awarded against BCE has been finally decided against DDI in state court. That issue is precluded here. The amount of fees the state court determined that BCE owes is precluded, too.

For DDI to recover against SLS on the professional liability claim, several things have to occur. First, DDI has to prevail here on its claim that Hartford breached the settlement agreement by challenging DDI's right to recover attorney fees from Hartford, or on its appeal of the state court's determination that Hartford, is not liable for the attorney fees under the partial settlement. Second, DDI has to demonstrate that it did not recover the correct amount of fees from BCE and Hartford as a result of SLS's professional failings. Third, it must show that it has been damaged by SLS's failure to segregate to the extent of the fees it has been unable to collect from BCE, apparently because that company is judgment-proof. These future uncertainties implicate the ripeness doctrine and the Court's power to hear and consider the merits of this adversary proceeding.

8

The ripeness doctrine is a question of timing. It asks whether the challenged harm has matured sufficiently to warrant judicial intervention.[22] The doctrine arises from Article III constitutional limitations on judicial power as well as prudential reasons for refusing to exercise jurisdiction.[23] The Tenth Circuit Court of Appeals has stated that in evaluating prudential ripeness "the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."[24] If that inquiry is satisfied, the court examines the hardship to the parties of withholding judicial consideration – determining whether the challenged action creates a direct and immediate dilemma for the parties.[25] The courts also consider whether more factual development is needed before judicial decision.[26] The constitutional requirements of the ripeness doctrine are satisfied if a threatened injury is sufficiently imminent to establish standing.[27]

DDI's claim is not ripe for adjudication because it rests on future contingencies that may never come to pass. Assuming without deciding that Hartford breached the settlement agreement by opposing DDI's right to fees under the payment bond, the language of the attorney fee provision in the settlement agreement expressly permitted Hartford and BCE to challenge the amount of the attorney fees "based on

---

[22] *In re Westby,* 473 B.R. 392, 401 (Bankr. D. Kan. 2012), citing *Tarrant Regional Water Dist. v. Herrmann,* 656 F.3d 1222 (10th Cir. 2011); *Awad v. Ziriax,* 670 F.3d 1111, 1124 (10th Cir. 2012) (Aim of ripeness doctrine is to prevent courts from entangling themselves in abstract disagreements by avoiding premature adjudication, citing *Abbott Labs. v. Gardner,* 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99 (1977)).
[23] *Awad v. Ziriax,* 670 F.3d at 1124.
[24] *Initiative and Referendum Inst. v. Walker,* 450 F.3d 1082, 1097 (10th Cir. 2006).
[25] *Westby, supra.*
[26] *In re Swanson,* 343 B.R. 678, 680-81 (Bankr. D. Kan. 2006).
[27] *Awad v. Ziriax, supra.*

**9**

the Subcontract and Kansas law." The state court recognized that the statutory language of KAN. STAT. ANN. § 60-1111(a) and courts considering similar bond claims hold that such public works payment bonds generally do not cover prevailing party attorney fees.[28] Therefore, the court concluded that, as a matter of Kansas law, the amount of attorney fees owed by Hartford was zero. I am bound to give the Johnson County fee judgment full faith and credit.[29] In short, there is no claim against SLS unless and until Hartford is found liable for fees, is required to pay DDI, and it resists making that payment because it cannot determine which fees are related to the DDI-BCE subcontract dispute. Thus several things must occur before DDI can state a plausible claim against SLS.

Embedded in the third cause of action, DDI also claims that it is entitled to disgorgement of all fees it paid SLS up to the $378,662 it has been unable to collect

---

[28] Adv. Dkt. 17-3, p. 11, citing *Blinne Contracting Co. v. Bobby Goins Enterprises, Inc.,* 715 F. Supp. 1044, 1046 (D. Kan. 1989), *aff'd* 1 F.3d 1249 (10th Cir. 1993). The district court in *Blinne* held that only the value of goods and services used or expended in the construction of a public improvement are recoverable under § 60-1111; lost profits or damages incurred from a contract breach are not recoverable against the bond. 715 F. Supp. at 1046. Such public works bonds are viewed as substitutes for mechanic's liens and do not broaden the class of those protected. *Wichita Sheet Metal Supply, Inc. v. Dahlstrom and Ferrell Const. Co., Inc.,* 246 Kan. 557, 562, 792 P.2d 1043 (1990). *See also Hope's Architectural Products, Inc. v. Lundy's Const., Inc.,* 762 F. Supp. 1430, 1434 (D. Kan. 1991); *Dun-Par Engineered Form Co. v. Vanum Const. Co., Inc.,* 49 Kan. App. 2d 347, 352, 310 P.3d 1072 (2013) (Obligation of surety bond is to be measured by the bond itself and may not be extended by implication or enlarged by construction beyond the terms of the executed bond); *U.S. ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.,* 834 F.2d 1533, 1542-32 (10th Cir. 1987) (Miller Act case; government subcontractor who prevailed against contractor on quantum meruit theory not entitled to recover prevailing party attorneys' fees under Miller Act absent a provision in the contract or payment bond or establishing an exception to the American Rule that each party bears its own fees); *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 126-31 (1974) (Successful plaintiff in Miller Act case not entitled to recover attorneys' fees);
[29] 28 U.S.C. § 1738.

from BCE and that this also issues from SLS's failure to segregate its billings.[30] DDI states no basis in its complaint for the legal morphing of its damage claim into a disgorgement claim. It is one thing to allege that damages resulted from a tort or contract breach; it is another to allege that the attorney fees awarded were not earned or owed, and should be returned.[31] Here, DDI alleges only that SLS did not allocate its attorney fees among the various matters that SLS was handling for it, not that SLS received attorney fees it did not earn or profited in some other way from its failure to segregate the BCE-Hartford fees. Nothing in the amended complaint suggests a basis for disgorgement and to the extent that is a separate claim, it should be dismissed as well.

*Conclusion*

Having determined that DDI's third cause of action is not ripe for adjudication, it fails to state a plausible claim against SLS and this court lacks subject matter jurisdiction; SLS's motion is GRANTED and the third claim for relief under the amended complaint is DISMISSED without prejudice. The second claim for relief against SLS is also DISMISSED as MOOT due to the fact that SLS's answer to the

---

[30] Adv. Dkt. 17, ¶ 49.
[31] A disgorgement award is an equitable remedy flowing from unjust enrichment and serves as restitution for benefits wrongfully obtained. In the contractual context, a contracting party's *deliberate* or conscious breach of contract that results in *profits* to the breaching party may give rise to a claim for restitution for the profit realized from the intentional breach if a damage award does not adequately compensate the non-breaching party. It is an alternative to a remedy in contract damages that is rarely available. *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT, § 39 (2011). *See also Shamberg, Johnson & Bergman, Chtd v. Oliver,* 289 Kan. 891, 220 P.3d 333 (2009) (recognizing disgorgement of fees as a proper remedy for attorney fees that were wrongfully received); *In re Kinderknecht,* 470 B.R. 149 (Bankr. D. Kan. 2012) (disgorgement of fees may be ordered if the attorney fees charged and collected were unreasonable).

**11**

Case 15-05016    Doc# 39    Filed 08/14/15    Page 11 of 12

original complaint "waives, disclaims, and releases" any claim or lien it has against DDI for outstanding attorneys' fees.[32] A partial judgment shall issue this day.

### 

---

[32] Adv. Dkt. 11.